## CLERK OF THE CIRCUIT COURT FOR DORCHESTER COUNTY *v.* CHESAPEAKE BAY SHORES, INC.

[No. 272, September Term, 1973.]

*Decided May 20, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*William J. Giacofci, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

Submitted on brief by *Richard M. Matthews* for appellee.

SINGLEY, J., delivered the opinion of the Court. SMITH and ELDRIDGE, JJ., dissent and SMITH, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 632 *infra.*

This is an appeal by the Clerk of the Circuit Court for Dorchester County (the Clerk) from an order of the Maryland Tax Court instructing him to refund documentary stamp and transfer taxes which he had collected.[1] The facts, having been stipulated to by the parties, may be briefly summarized.

On 20 August 1970, two Maryland corporations entered into articles of sale and transfer with Chesapeake Bay Shores, Inc. (Chesapeake), a Delaware corporation, under which Chesapeake was to receive substantially all of the assets of the two corporations. These assets consisted of parcels of real estate located in Dorchester County, and, on the same day when the articles were signed, each of the Maryland corporations executed a deed conveying its property to Chesapeake. Upon the recordation of the two deeds with the Clerk on 21 August 1970, Chesapeake was assessed $5,533.34 in documentary stamp taxes,[2] and

---

1. No issue was made of the Clerk's right to bring this appeal.

2. Maryland Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 277 (a), provides:

> "A [recordation] tax is hereby imposed upon every instrument of writing conveying title to real or personal property . . . offered for record and recorded in this State with the clerks of the circuit courts of the respective counties, or the clerk of the Superior Court of Baltimore City . . . . The term 'instruments of writing' shall include deeds, mortgages, chattel mortgages, bills of sale, leases, deeds of trust, contracts and agreements . . . ."

$2,493.70 in transfer taxes.[3] Both assessments were paid without protest.

On 27 November 1970, the articles of sale and transfer were filed with, and approved by, the State Department of Assessments and Taxation, in accordance with Maryland Code (1957, 1973 Repl. Vol.) Art. 23, § 66. Sometime thereafter, Chesapeake filed a petition with the Clerk for a refund of the taxes paid when the two deeds had been filed. Chesapeake contended that the actual transfer of title to the properties was accomplished when the articles of sale and transfer were filed and approved, and that therefore the deeds had not effected the transfers of title, but merely confirmed them. Acting on the Attorney General's advice, the Clerk denied Chesapeake's request. Chesapeake then filed a petition in the tax court, seeking a recovery of the $8,027.04 which it had paid.

In the tax court, Chesapeake noted that Code (1957, 1973 Repl. Vol.) Art. 23, § 66 (i), provides that "a transfer of property and assets of a corporation of this State . . . shall be effective (a) when the articles of consolidation, merger or transfer have been accepted for record by the Department [of Assessments and Taxation]." Consequently, Chesapeake argued, the deeds filed with the Clerk on 21 August 1970 did not bring about the transfer of title to the properties, because under section 66 (i) of article 23 the conveyances were not effective until 27 November 1970, when the articles of sale and transfer were filed and accepted.

The Clerk's position was that the deeds were effective, that the requirements imposed by section 66 were intended to apply only to Maryland corporations, and that because

---

**3.** Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 278A (a), provides:

"A [transfer] tax is hereby imposed upon every written instrument conveying title to real property . . . offered for record and recorded among the land records in the State . . . . The term 'written instrument' includes leases for a term of years above seven years, not perpetually renewable but does not include any mortgage, deed of trust, conditional sales contract, or any other device the purpose of which is to afford a security in real property rather than convey title thereto."

Chesapeake was a Delaware corporation, title to the properties was transferred when the deeds were recorded. As a result, he asserted that the taxes were properly collected.

The tax court rejected the Clerk's contention, found no support for the argument that the requirements of section 66 did not apply, and reasoned that since both of the transferors were Maryland corporations, a valid transfer of substantially all of their assets could have only been made in the manner prescribed by section 66. Accordingly, the Clerk was ordered to refund a total of $8,027.04 which he had collected from Chesapeake.

It is undisputed that neither documentary stamp nor transfer taxes may be assessed upon a written instrument which does not convey title to, *inter alia,* real property, Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, §§ 277, 278A; *see also* 47 Op. Att'y Gen. 196 (1962); 43 Op. Att'y Gen. 332 (1958). It is also apparent that when a Maryland corporation transfers all or substantially all of its assets, such a transfer becomes effective only when the Department of Assessments and Taxation accepts the transferor corporation's articles of transfer, Code (1957, 1973 Repl. Vol.) Art. 23, § 66 (a), (i). In light of these statutes, it would be difficult to reach a conclusion other than that transfer of title was effectively consummated only when the articles of sale and transfer were accepted by the Department of Assessments and Taxation on 27 November 1970.

This result is buttressed by the realization that in order for a Maryland corporation to transfer title to real property, in most cases,[4] compliance with Code (1957, 1973 Repl. Vol.) Art. 23, § 66, is mandatory, *Downing Dev. Corp. v. Brazelton,* 253 Md. 390, 396, 252 A. 2d 849, 852 (1969); *cf. Prince George's Country Club, Inc. v. Edward R. Carr, Inc.,* 235 Md. 591, 607-09, 202 A. 2d 354, 362-63 (1964), and that Code (1957, 1973 Repl. Vol.) Art. 23, § 72 (1), provides that "property . . . of the transferor shall be transferred to,

---

4. *See* Code (1957, 1973 Repl. Vol.) Art. 21, § 14-113, discussed *infra,* which provides for limited exceptions to the general rule.

vested in and devolved upon the transferee ... *without further act or deed. . . ."* (Emphasis supplied.)

The Clerk concedes that if the articles of sale and transfer had been filed and approved prior to the filing of the deeds, no documentary stamp or transfer taxes would have been due. This is true because the filing of the deeds was altogether unnecessary to effect the passage of title to the properties. However, the Clerk insists that since the deeds were filed first they effectively transferred title to the properties. What he overlooks is the following language contained in Code (1957, 1973 Repl. Vol.) Art. 23, § 72 (1): "[C]onfirmatory deeds ... or other like instruments, when deemed desirable to evidence such transfer, vesting or devolution of any property ... may *at any time* ... be made and delivered ...." (Emphasis supplied.) Thus, in the posture of this case, it is of no significance that the deeds were filed prior to the articles of sale and transfer. They were not only not required but played no part in the transfer, and were presumably recorded only to facilitate future title examinations.

In this appeal, apparently for the first time, the Clerk urges that full compliance with section 66 of article 23 was not necessary to effect a valid transfer of title in view of Code (1957, 1973 Repl. Vol.) Art. 21, § 14-113 (effective 1 January 1973), which provides:

> "Every deed of property by a Maryland corporation which contains a certification by a corporate president or vice-president to the effect that the conveyance is not part of a transaction in which there is a sale, lease, exchange, or other transfer of all or substantially all the property and assets of the corporation, shall be considered valid and effective whether or not there has been compliance with the procedures of Article 23, § 66, despite the fact that said conveyance is in fact part of such a transaction. Every deed of property by a Maryland corporation, executed and recorded before the effective date of this article, shall not be invalid solely because of noncompliance with

> Article 23, § 66 unless proceedings to set the deed aside are commenced on or before July 1, 1973."

Since the deeds in question did not contain "a certification . . . to the effect that the conveyance [was] not part of a transaction in which there [was] a sale, lease, exchange, or other transfer of all or substantially all the property and assets of the corporation," the first sentence of the statute is clearly inapplicable to the present case. The second sentence is directed to instances where there is a failure to comply with section 66 of article 23, which is not the situation here. It seems that section 14-113 of article 21 was promulgated to promote the marketability of property, by protecting transferees where transferor corporations had either made transfers beyond the scope of section 66 of article 23, or had made transfers to which section 66 was applicable but had failed to comply with the requirements it imposed.

Perhaps the enactment of the statute was prompted by this Court's decision in *Isle of Thye Land Co. v. Whisman*, 262 Md. 682, 279 A. 2d 484 (1971), to eliminate an inference, which one might draw from that opinion, to the effect that a transferee can never acquire valid title to property from a Maryland corporate transferor unless the latter complies fully with the provisions of section 66. Whatever the rationale behind section 14-113 of article 21, that statute does not affect the decision in this case, because the dictates of section 66 were followed here.

The tax court was correct in ordering the Clerk to refund a total of $8,027.04 to Chesapeake.

> *Order of the Maryland Tax Court affirmed, costs to be paid by appellant.*

*Smith, J., dissenting:*

I would reverse.

Maryland Code (1957, 1973 Repl. Vol.) Art. 23, § 66 (i) came into the Maryland scheme of things with the passage of a general revision of the corporation laws in 1951, *see* H.

Brune, *Maryland Corporation Law and Practice* § 316 (rev. ed. 1953), long after the passage of the predecessor of Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.) Art. 81, § 277, one of the tax sections here involved. *See Hammond v. Phila. Elec. Pwr. Co.*, 192 Md. 179, 63 A. 2d 759, 6 A.L.R.2d 298 (1949), for a history of that tax section. The prior law did provide for approval by two-thirds of each class of stock outstanding and entitled to vote, but articles of sale were not required to be recorded. *See* H. Brune, *Maryland Corporation Law* § 166 (1933).

We have heretofore viewed § 66 (i) as primarily intended for the protection of stockholders. For instance, in *Oregon Ridge v. Hamlin*, 253 Md. 462, 466, 253 A. 2d 382 (1969), Chief Judge Hammond observed for the Court that "[i]t [was] obvious . . . that § 66 of Art. 23 of the Code was not complied with. Nevertheless we think Judge Raine was right in refusing to allow Dorsey and Oregon to benefit from this failure." He went on to say:

> "Two stockholders' meetings of Oregon were called by Dorsey after Eastern took over and not only was the new arrangement not repudiated by Oregon, it seemingly was accepted and agreed to be implemented by an accounting — never furnished — of Oregon's stewardship (or lack of it) while it nominally was the producer. As Judge Brune for the Court said in *Baumohl v. Columbia Jewelry Co.*, 209 Md. 278, 286, in indicating that the conduct of the complainant there would estop him from the right to complain of failure to comply with §§ 62 and 66 of Art. 23 of the Code: 'we think that the appellants have failed to state a case for the interposition of an equity court.' " *Id.* at 467.

In *Beccio v. Tawnmoore Apartments*, 265 Md. 297, 289 A. 2d 311 (1972), a suit was filed on June 20, 1969, under the Uniform Fraudulent Conveyance Act (Code (1957) Art. 39B). The deed which the suit sought to set aside was dated June 24, 1968. It covered substantially all of the property and assets of the corporation. There was no compliance with the

provisions of Art. 23, §§ 66, 70 relative to execution and filing of articles of sale until September 11, 1969, after the suit was filed. It was contended that for this reason the June 24, 1968, conveyance was ineffective. We there said:

> "Relative to a statute such as this Mr. Justice Roberts said for the Supreme Court of the United States in *Royal Ind. Co. v. Amer. Bond Co.*, 289 U. S. 165, 53 S. Ct. 551, 77 L. Ed. 1100 (1933):
>
> > 'The question is purely one of the internal management of the corporation. Creditors have no standing to plead statutory requirements not intended for their protection. If the stockholders' rights had been infringed, and they chose to waive them, a creditor could not assert them in opposing an adjudication [as a bankrupt].' *Id.* at 171.
>
> In *United States v. Jones*, 229 F. 2d 84, 58 A.L.R.2d 778 (10th Cir. 1955), *cert. den.* 351 U. S. 939, 76 S. Ct. 835, 100 L. Ed. 1466 (1956), the court said:
>
> > 'Under the great weight of authority, statutes requiring numerical stockholder approval of a mortgage or transfer of substantially all of the corporate assets are "for the protection of the stockholders and have nothing to do with the interests or rights of creditors." ' *Id.* at 86.
>
> citing *Royal Ind. Co.* To the same effect are *Greene v. Reconstruction Finance Corporation*, 100 F. 2d 34, 36 (1st Cir. 1938), and *George H. Gilbert Manuf. Co. v. Goldfine*, 317 Mass. 681, 686, 59 N.E.2d 461 (1945), to mention but a few cases. See in this regard annotation 'Who may assert invalidity of sale, mortgage, or other disposition of corporate property without approval of stockholders,' 58 A.L.R.2d 784 (1958).
>
> "For purposes of this case we need go no further than to hold that where a transfer at the outset had

the consent of 99% of the stockholders (Morton's 98 shares plus his father's one share equaled 99%), where the formal articles of transfer have since been executed and recorded, and where the Maryland statute, as Judge Menchine pointed out in ruling on motion for summary judgment, has imposed no time limitation for compliance, a creditor will not be heard to attack the tardy compliance." *Id.* at 302-03.

In my experience as a title searcher I have seen instances in which individuals about to convey property have learned, to their chagrin, that they obtained nothing from their grantor, that their grantor actually did not own the land which he purported to convey. Applying the logic of the majority here, an individual who finds that he did not receive title to anything in a deed to him would be able to go back and apply for refund of the taxes paid at the time of the recordation of his deed. I do not think such was the intention of the General Assembly.

As I see it, when this deed was presented to the Clerk of the Circuit Court for Dorchester County for recordation it appeared on its face to be a valid conveyance. It did not purport in any way to be a quit claim deed. The grantee made the decision to record the deed. The tax was thus due.

Judge Eldridge authorizes me to state that he concurs in the views here expressed.