505 A.2d 537

**HAMPTON ASSOCIATES LIMITED PARTNERSHIP, et al.**

v.

**BALTIMORE COUNTY, Maryland, et al.**

No. 495, Sept. Term, 1985.

Court of Special Appeals of Maryland.

March 6, 1986.

**552**

Deborah G. Shortridge and Eugene P. Smith (Weinberg and Green, on brief), Baltimore, for appellants.

Michael J. McMahon, Asst. Co. Atty. (Malcolm F. Spicer, Jr., Co. Atty., on brief), Towson, for appellees.

Argued before GILBERT, C.J., and BLOOM and WENNER, JJ.

BLOOM, Judge.

This case involves the validity of an excise tax imposed by Baltimore County on a real estate transfer effected by the filing of Articles of Transfer with the State Department of Assessments and Taxation (hereinafter referred to as the Department) in accordance with Title 3, subtitle 1 of the Corporations and Associations article of the Annotated Code of Maryland (1985 Repl.Vol.).

Hampton Apartments, Inc., a Maryland corporation, sold real estate located in Baltimore County to Hampton Associates Limited Partnership, the transfer being effected by the filing of Articles of Transfer with the Department. The transferror then filed Articles of Dissolution. Upon receiving notice of the transaction, Baltimore County made a demand upon the transferror and transferee for payment of a transfer tax in the amount of $44,032, representing 1.6 percent of the stated consideration for the transfer, $2,752,-000. Since that demand did not produce a favorable response, Baltimore County and the director of its Office of Finance brought suit in the Circuit Court for Baltimore County against the surviving directors of Hampton Apartments, Inc., and Hampton Associates Limited Partnership and its general partner, Jeffrey Levitt. The court granted summary judgment in favor of Baltimore County for $44,-

032. The defendants [1] paid the judgment and then took this appeal.

Appellants advance several arguments, which fall into two categories: (1) That Baltimore County lacked the power to impose any tax on real estate transfers effected by the filing of Articles of Transfer with the State Department of Assessments and Taxation and (2) alternatively, that if the power to impose such tax exists the County's failure to comply with statutory notice requirements rendered its attempt to exercise that power null and void.

## I

Before discussing the issues raised by appellants, we must first dispose of appellees' motion to dismiss the appeal, in which it is asserted that the matter at hand is moot and, in any event, not properly before us because of appellants' failure to exhaust their administrative remedies.

The term "moot" is used to define that class of cases where there is no longer present a justiciable controversy because the issues involved have become academic or dead. *Sigma Chi Fraternity v. Regents of the University of Colorado*, 258 F.Supp. 515, 523 (D.Colo.1966). "Appellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course." *Lloyd v. Board of Supervisors*, 206 Md. 36, 39, 111 A.2d 379 (1954). A moot case is dismissible by this court under Maryland Rule 1035(b)(8).

It is contended by appellees that satisfaction of the judgment by payment has rendered moot the controversy as to the validity of Baltimore County's transfer tax, thus necessitating dismissal of the appeal. We reject that con-

---

**1.** James Dormant, Jr., John Dormant and Marguerite Dormant, as surviving directors of Hampton Apartments, Inc., as well as Hampton Associates Limited Partnership and Jeffrey Levitt, General Partner, t/a Hampton Associates Limited Partnership, will hereafter be collectively referred to as "appellants."

tention. The mere fact that the judgment has been paid and satisfied does not preclude appellants from seeking restitution on appeal. The Court of Appeals, in *Franzen v. Dubinok*, 290 Md. 65, 427 A.2d 1002 (1981), examined in depth the question of whether a judgment debtor who fully satisfies an award against him thereby forfeits his right to an appeal. The answer, we are told, turns upon "whether the compliance with the judgment is the result of legally sufficient compulsion." 290 Md. at 69, 427 A.2d 1002. After noting a split amongst jurisdictions as to what constitutes "legally sufficient compulsion," the Court expressly adopted the view of the New York Court of Appeals, which is that

> a party against whom a judgment has been rendered is not prevented from appealing to this court by the fact that he has paid the judgment, unless such payment was by way of compromise, or with an agreement not to take or pursue on appeal.

*Id.* at 72, 427 A.2d 1002, quoting *Hayes v. Nourse*, 107 N.Y. 577, 14 N.E. 508 (1887). In support of this view, the Court of Appeals explained:

> Not only does the final judgment of a court, by its nature, serve to coerce the party against whom it operates, but in Maryland, it also automatically creates a lien on any real and certain leasehold property once the judgment is properly entered or recorded.

290 Md. at 70–71, 427 A.2d 1002. Furthermore,

> the fact that the appellant failed to obtain a stay or other supersedeas pending appeal is normally held to have no effect on the voluntariness determination, since the obtention of such relief is not generally a prerequisite to an appeal.

*Id.* at 70, 427 A.2d 1002.

In the instant case, appellants did not make payment by way of settlement or compromise, nor did they in any way agree not to pursue their right of appeal. Appellants merely complied with a judgment that automatically created

a lien on their property—a lien that would not be removed or suspended by filing an appeal, but only by its satisfaction in full. Posting of a supersedeas bond, while temporarily suspending the judgment, might well have imposed a substantial additional cost on appellants. Under these circumstances, payment of the judgment is quite properly viewed as involuntary, creating no bar to appellate review and no problem of mootness.

■ Appellees also move for dismissal on the grounds that appellants have failed to exhaust administrative remedies, specifically, those provided by § 215 of article 81, Maryland Annotated Code (1980 Repl.Vol.). Section 215 allows a taxpayer to file a claim for refund of special taxes erroneously or mistakenly paid to any State, county or municipal agency. The answer to this contention requires no detailed analysis. Appellants did not by-pass an administrative remedy in favor of a judicial one; this suit was initiated by appellees' filing of a complaint in the circuit court. There is no administrative relief available to appellants from a judgment of the circuit court.

## II

Turning now to the issue of the extent of Baltimore County's taxing authority, we begin with § 11–15 of the Baltimore County Code (1978) which provides:

(a) The county is hereby authorized to have and exercise, within the limits of the county, in addition to any and all taxing powers heretofore granted by the General Assembly, the power to tax to the same extent as the state has or could exercise such power within the limits of the county as a part of its general taxing power; and to provide by resolution for the imposition, assessment, levy and collection of any tax or taxes authorized by this section; and from time to time to grant exemptions and to modify or repeal existing or future exemptions; provided, however, that any tax on distilled spirits imposed under the authority of this section shall not exceed fifty

cents ($0.50) per wine gallon of one hundred (100) proof or less and such tax shall expire as of December 31, 1955, but nothing in this section shall be construed to prevent the collection of taxes imposed on alcoholic beverages after such date if such taxes are due and payable on or before December 31, 1955.

(b) Provided, that the county shall not have the power to impose any tax upon wines or malt beverages, intangible personal property or upon the subject matter of Annotated Code of Maryland, 1957, sections 135 to 157 of Article 56 (Gasoline Tax); section 81 of Article 66½ (Motor Vehicle Registration); section 29 of Article 66½ (Titling Tax); sections 181 to 190 of Article 56 and section 273 of Article 81 (Motor Vehicle Taxation); section 9 (32) of Article 81 (Class A and Class D Motor Vehicles); sections 279 to 323 of Article 81 (Tax on Incomes); Article 78B (Horse racing and Pari-Mutuel Betting); sections 194 and 195 of Article 81 (Bonus Tax); sections 197 to 201 of Article 81 (Tax on Franchise to be a Corporation); sections 129 and 130 of Article 23 (Recording Corporate Papers); section 128 of Article 81 (Deposits of Savings Banks); sections 135 to 143 of Article 81 (Insurance Premiums); sections 149 to 193 of Article 81 (Inheritances); Article 62A (Estate Tax); or section 144 of Article 81 (Tax on Commissions of Executors and Administrators); nothing in this section shall be construed to authorize the county to impose a tax upon the gross receipts of any person in the county; provided, however, that county in taxing the receipts, from motor vehicle operations, may only tax receipts from operations of motor vehicles having a permit or permits from the Public Service Commission of Maryland authorizing both the taking on and discharging of passengers at more than one point within the county and/or the transportation of passengers between two (2) or more points within the county.

(c) On or after June 1, 1953, no tax shall be levied or imposed by the county pursuant to any of the provisions

of this section unless the levy or imposition of the tax is advertised for three (3) consecutive weeks in two (2) newspapers published in the county and having a general circulation in the county. After such advertising, a public hearing shall be held concerning the levy and imposition of such tax. The provisions of this section shall not apply to any tax levied and imposed prior to June 1, 1953.

Enacted by the Maryland Legislature as a public local law, this statute, Chapter 769 of the Laws of 1953, endowed the Baltimore County Commissioners, as predecessors to the County Council, with concurrent power to tax to the same extent as the State has or could exercise within the limits of the County as a part of its general taxing power, subject to specific limitations not applicable to this case. Pursuant to the broad delegation of taxing authority contained in § 11–15, the County Council in 1964 enacted Tax Resolution # 6, levying a special tax upon the transfer of any estate of inheritance or freehold or any estate longer than seven years, at the rate of ½ of 1 percent of the value of the property transferred. This law has been amended from time to time, most notably in 1968 and again in 1983 when the rate of taxation was increased to 1.6 percent. It is currently codified at § 11–74, Baltimore County Code (1978).

▆ Appellants correctly point out that the reach of Baltimore County's power to tax is strictly limited by the terms of § 11–15(a) to events occurring within the County. Appellants argue that since the transfer in question was effected by the filing of Articles of Transfer with the Department in Baltimore City the County overstepped the bounds of its authority, rendering the tax assessed against Hampton Associates null and void. This argument has as its premise the notion that the transfer tax is imposed on the very act of filing and recording Articles of Transfer in the office of the Department, an erroneous notion that appellants repeat throughout their argument. While it is true that a transfer of corporate assets becomes effective upon acceptance of Articles of Transfer by the Department, Md. Corps. &

Ass'ns Code Ann. § 3–113 (1985); *see also Clerk of the Circuit Court v. Chesapeake Bay Shores, Inc.*, 271 Md. 627, 319 A.2d 811 (1974), a tax on such a transaction goes to the underlying transfer of property and not to the act of filing. Documentation of the transfer, while legally significant, is not the object of the tax. Section 3–113 of the Maryland Corporations and Associations Code speaks in terms of the *time* of filing:

[A] consolidation, merger, share exchange, or transfer of assets is effective as of the latter of:

(1) The time the Department accepts the articles of consolidation, merger, share exchange, or transfer for the record; or

(2) The time established under the articles not to exceed 30 days after the articles are accepted for the record.

This indicates that the provision making a transfer effective by the filing of certain documents is in the nature of a recordation statute.

In *Vournas v. Montgomery County*, 53 Md.App. 243, 452 A.2d 1263 (1982), *aff'd* 300 Md. 123, 476 A.2d 705 (1984) this court upheld an excise tax imposed by Montgomery County on the transfer of farmland to an agency of the United States government even though the transfer was involuntary by reason of condemnation. That transfer documents were locally recorded was not in dispute. The court focused its attention on the character of the transfer and specifically on the question of whether the involuntary nature of the transfer should preclude application of the tax. Implicit in that decision is the principle that it is the conveyance of real estate from one party to another that is the taxable event; recordation is an incidental event to which recordation fees, as distinct from taxes, may apply. We believe that the scope of § 11–74 is broad enough to cover the real estate transfer here in question. The fact that the filing of Articles of Transfer took place in Baltimore City is of no moment since the act of recordation is distinct from the taxable event of transfer.

## III

Appellants rely heavily upon § 11–15(b) of the Baltimore County Code (1978), which states that the County shall have no power to impose any tax upon the subject matter of §§ 129 and 130 of article 23, Maryland Code Annotated (1957). Those provisions of former article 23, currently codified as §§ 1–204 and 1–203, respectively, of the Maryland Corporations and Associations Code, set out a schedule of filing and recordation fees and procedures to be followed when depositing corporate documents with the Department. Appellants urge a very broad interpretation of the "subject matter" of these provisions. Relying again on the erroneous assumption that filing of Articles of Transfer is synonymous with the event of transfer, appellants assert that the subject matter of § 1–203 extends to the transfer itself. If that were the case, the County's transfer tax, enacted locally, would run afoul of the prohibition contained in § 11–15(b), a law enacted by the Maryland Legislature.

Giving § 1–203 such a broad sweep would be tantamount to legislating by judicial fiat. On its face, § 1–203 is nothing more than a recordation fee schedule, with charges ranging from $1 for obtaining a corporate certificate of good standing to $50 for registering a foreign corporation. Section 1–204 is merely a housekeeping measure dealing with procedures for completing the files that the Department keeps on each registered corporation. While the State may, by statute, restrict the County's authority to tax and subsection (b) of § 11–15 imposes specific limitations thereon, the County's general power to levy taxes to the same extent as the State could, including real property transfer taxes, is clearly delineated in § 11–15(a). There is no conflict between the County's code provisions imposing the tax, § 11–74, and the limitations on the County's taxing authority, contained in § 11–15(b).

## IV

Article 81, § 277A of the Annotated Code of Maryland (1980 Repl.Vol.) authorizes and directs the Department to

collect and distribute the transfer tax of the counties and Baltimore City, at the rate locally imposed on the sale or transfer of real property, upon the filing of articles of sale, lease, exchange or transfer as required by the Corporations and Associations article of the code, with certain exceptions not applicable to this case. Subsection (e) of that section, however, expressly excepts Baltimore County from the provision of § 277A.[2]

 Interpreting § 277A as a grant of taxing power, appellants argue that the exclusion of Baltimore County from the benefits of § 277A precludes Baltimore County from imposing and collecting a transfer tax on transactions covered by that section. Appellees have simply misconstrued the statute. It is not a grant of taxing power, but merely a device for the collection and distribution of taxes imposed by the counties and Baltimore City under their own authority to impose them.

## V

 Appellants' invocation of the doctrine of preemption is equally unavailing. It is asserted that §§ 277(t), 277A, 277B and 278A of article 81 evidence a clear intent on the part of the legislature to occupy the entire field of taxing transfers of real property. We can find in these provisions no sound basis to conclude that the State has impliedly preempted this field of taxation; certainly no express preemption is contained therein.

Section 277 deals with recordation taxes; subsection (t) thereof authorizes the Department to collect such tax upon documents effecting transfers of property filed with it. Section 277A, as we have noted, provides a means for the

---

2. Appellees assert that Baltimore County was expressly excepted from the collection scheme because it was content with its own collection mechanism and did not wish to incur the incidental costs associated with collection by the State. In 1985, the Maryland Legislature enacted Chapter 157, Senate Bill #249, which will eliminate the exception for Baltimore County and produce a uniform statewide collection scheme, effective February 1986.

Department to collect, in addition to a recordation tax, local transfer taxes imposed by the counties and Baltimore City. Section 278A imposes a state transfer tax in addition to recordation taxes and local transfer taxes. Section 277B makes the taxes provided for in the other sections applicable to certain corporate and partnership conveyances. Since § 277A specifically recognizes the authority of the counties to impose transfer taxes and provides a means of collecting them, there is obviously no merit in the contention that the State has preempted the field of taxing transfers of corporate property effected by filing documents with the Department.

## VI

Appellants argue in the alternative that, even if the State has not preempted the field and even if the County levied its transfer tax under a valid grant of authority from the State, the tax imposed would nonetheless be null and void because of the County's failure to comply with the statutory notice requirements governing the enactment of what is now § 11–74 of the Baltimore County Code. The applicable requirements for notice to the public are contained in § 11–15(c) of the County Code, which provides:

> [N]o tax shall be levied or imposed by the county pursuant to any of the provisions of this section unless the levy or imposition of the tax is advertised for three (3) consecutive weeks in two (2) newspapers published in the county and having a general circulation in the county. After such advertising, a public hearing shall be held concerning the levy and imposition of such tax.

Appellees concede that the notice actually given falls short of that mark. Only general notice was given prior to enactment of Bill # 86–68 in 1968, which first made the County transfer tax applicable to transfers effected by filing Articles of Transfer with the Department. With respect to Bill # 38–83, the latest version, pre-enactment publication appeared in "The Jeffersonian," a county publication, on April 7 and April 14 of 1983 and post-enactment

publication appeared in "The Jeffersonian" on May 5, 1983. Appellees' position is that no procedural infirmity exists because the enactments in question were only matters of general legislation to which the strictures of § 11–15(c) do not apply. Instead, it is suggested that the notice requirements which govern are those contained in the Baltimore County Charter § 308(e) and the Maryland State Constitution, Article XI–A, § 3 and that the County complied with those provisions. Indeed, appellants appear to have conceded that the notice requirements of the Charter and the Constitution were met when attorney for appellants stated at the March 26, 1985, hearing before the circuit court, with reference to the Charter and the Constitution, "We're not disputing that this bill complied with that." The circuit court agreed with appellees and ruled that the stricter notice requirements of § 11–15(c) did not apply to enactment of the tax in question because the bill creating the tax was merely "general legislation." We disagree with the circuit court but find in appellees' favor for other reasons. We explain.

What is now § 11–74 of the Baltimore County Code originated with Tax Resolution # 6 of the Baltimore County Council, which took effect on January 1, 1964.[3] Tax Resolution # 6 levied a special tax on the transfer of any estate of inheritance or freehold or on any estate above seven years within the County at the rate of ½ of 1 percent of the value of the property transferred. Section 12 of that act enumerated various categories of transactions that were to be exempt from the tax. For example, subsection (j) provided that

---

**3.** The sufficiency of notice to the public regarding this enactment is not in dispute. The preamble to Tax Resolution # 6 contained the following clause: "Whereas, notice of said tax was advertised for three consecutive weeks in two newspapers published in the county and having a general circulation in the county, and after such advertising a public hearing was held concerning the levy and imposition of said tax."

> [s]uch tax shall not apply where a transfer is made expressly for the purpose of confirming and carrying out articles of consolidation, merger, *transfer* or voluntary dissolution of corporations duly accepted for record by the State Department of Assessments and Taxation. . . .

(emphasis supplied).

During the 1968 councilmanic session, the County Council passed Bill # 86–68, which deleted the word "transfer" from § 12(j) of the 1964 act, then codified at § 11–52.6 of the Baltimore County Code. The effect of Bill # 86–68 was to eliminate the tax exemption for transfers of corporate real property carried out by filing Articles of Transfer with the Department of Assessments and Taxation. Apparently, the County Council acted upon the suggestion of then Director of Finance for Baltimore County, Norman W. Wood, who provided the following reason for the proposed change:

> There is a loophole in the present section 12 that would permit one corporation to transfer its assets to another corporation by means of articles of transfer filed with the State Department of Assessments and Taxation which would bypass the payment of the transfer tax.

In 1983, County Council Bill # 38–83 was passed, repealing and reenacting § 11–74, with certain amendments that do not concern us here, as it appeared in Article IX of the Baltimore County Code of 1978 (1981 Cumulative Supplement).

Appellees assert that neither Bill # 38–83 nor Bill # 86–68 triggered the notice requirements of § 11–15(c) because neither act imposed any new tax and they were therefore merely matters of general legislation. Deletion of the word "transfer" from § 12(j) of the 1964 act, however, undeniably had the effect of repealing a previously existing tax exemption. This, we believe, was the equivalent of levying a new tax.

Maryland Ann. Code article 81, § 2(20b) (1980 Repl.Vol.) defines the term "levy" as

*o*

the formal imposition of property taxes, at a certain fixed rate on assessed valuation, and the doing of whatever is necessary to authorize the collection of these taxes.

In *Casey Development Corp. v. Montgomery County,* 212 Md. 138, 129 A.2d 63 (1957), the Court of Appeals distinguished a levy from an assessment. Whereas an assessment is merely an official estimate of the sums which are to constitute the basis for an apportioned tax, the Court said that a levy is

> the imposition of the tax itself. It " * * * is a legislative function, and includes a determination that the tax shall be imposed, and also the ascertainment of the amount necessary or desirable to be raised, the amount or rate to be imposed, and the subjects or persons to contribute to the tax."

*Id.* at 146, 129 A.2d 63. What we have here is an affirmative act of Baltimore County's legislative body accomplishing precisely that. We agree, therefore, with appellants' contention that there is no distinction of merit between legislation that institutes a tax on a given kind of property and legislation that withdraws a tax exemption with respect to that same property. We disagree, however, with appellants' reasoning to the conclusion that the tax imposed on them was invalid.

Deficient pre-enactment notice of the 1968 act repealing the exemption for "transfers" affords no basis for relief because neither Bill No. 86–68 nor Bill No. 38–83, which repealed and reenacted the 1968 law, were in conflict with any charter or constitutional provisions. A court simply has no authority to declare legislation invalid unless it conflicts with some superior law.

That elementary principle was clearly stated in *Mayor and City Council of Baltimore v. State of Maryland,* 281 Md. 217, 378 A.2d 1326 (1977). There the City of Baltimore contended, *inter alia,* that Chapter 671 of the Acts of 1977, insofar as it authorized the acquisition of particular property for a prison site, was invalid for failure to comply with

the Maryland Environmental Policy Act, Md. Natural Resources Code Ann., § 1–301 *et seq* (1974, 1976 Cum.Supp.). The Court declared that argument to be obviously without merit because "[a]bsent some constitutional infirmity, a court has no power to declare void an act of the General Assembly." 281 Md. at 230. The same basic principle applies with equal logic to local laws enacted by the county council of a charter county.

Following the general election of November 6, 1956, when Baltimore County adopted a charter pursuant to the Home Rule Amendment, Article XI–A of the Maryland Constitution, the power to make local laws for the County shifted from the State legislature to the County Council. Section 3 of Article XI–A gives the County Council full legislative power to enact local laws on all matters covered by the grant of express powers under Section 2 of Article XI–A, *Town of Forest Heights v. Frank*, 291 Md. 331, 341, 435 A.2d 425 (1981), including the power to repeal or amend local laws of the County previously enacted by the General Assembly. *Murray v. Director of Planning*, 217 Md. 381, 143 A.2d 85 (1958). Subject to the restrictions of its own charter (and the rule that a locally enacted law is invalid if it conflicts with a public general law, *Heubeck v. Mayor and City Council of Baltimore*, 205 Md. 203, 107 A.2d 99 (1954)), the County Council has full power to enact legislation on all matters within the Express Powers Act (Md.Code Ann., art. 25A, § 5) that was adopted pursuant to Article XI–A, § 2 of the Constitution.

■ Neither Bill No. 86–68 nor Bill No. 38–83 conflicted with any constitutional or charter provisions or with any public general law, and both were enacted in accordance with all constitutional and charter procedural requirements. Consequently, there is no judicial authority to invalidate them.

Since no infirmity, substantive or procedural, exists with regard to the tax imposed on appellants, the judgment of the circuit court will be affirmed.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.