MURRAY *v.* DIRECTOR OF PLANNING et al.

(Two Appeals In One Record.)

[No. 290, September Term, 1957.]

*Decided June 19, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Johnson Bowie,* with whom was *W. Lee Harrison* on the brief, for the appellant.

*Arthur W. Machen, Jr.,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellees.

HORNEY, J., delivered the opinion of the Court.

These appeals concern the legality and constitutionality of an act of the County Council of Baltimore County (the County Council), known as Bill No. 35 (the Bill), which was enacted at the 1957 Legislative Session of the County Council on June 18, 1957, to take effect forty-five days after its enactment.

On August 6, 1957, John A. Murray (the petitioner), a resident and taxpayer of Baltimore County, filed a petition in the Circuit Court of Baltimore County against Malcolm H. Dill, Wilsie H. Adams and John G. Rose, the Director of Planning, Zoning Commissioner and Deputy Zoning Commissioner, respectively, (hereafter referred to by their official title, or, collectively, as the defendants), seeking a writ of *mandamus* for the avowed purpose of testing the validity of

the Bill. The trial court sustained the validity of the whole Bill except subsection (c) thereof, which was declared to be in conflict with the Baltimore County Charter (the Charter). After denying the petitioner's motion for a new trial, the court enjoined the Director of Planning from "exercising any powers or duties purportedly conferred upon him" by subsection (c) of the Bill, and all of the other prayers of the petition for the writ which sought generally to prevent and restrain the defendants from exercising and performing any of the powers and duties conferred and imposed upon them by the Bill were denied. The petitioner appealed from that part of the order sustaining the validity of the Bill generally, and the defendants filed a cross-appeal from that part of the order which invalidated subsection (c) of the Bill.

The Bill was intended to allay some of the confusion with respect to planning and zoning that has plagued Baltimore County for more than a decade. From the beginning, the line of demarcation between planning and zoning always has been an enigma. See *Lynn v. Goldman,* 216 Md. 562, 141 A. 2d 172 (1958); *Zinn v. Board of Zoning Appeals,* 207 Md. 355, 361, 114 A. 2d 614 (1955). The enacting clause of the Bill states that:

> "Section 371 of the Code of Public Local Laws of Baltimore County (1955 edition), title 25 'Planning and Sub-division Control,' be and it is hereby repealed and re-enacted, with amendments to read as follows:"

Those parts of the Bill with which we are principally concerned provide:

> "371(a) After receiving recommendations from the Planning Board, and subject to confirmation by the County Executive as provided in Section 402 (d) (1) of the Baltimore County Charter, the County Administrative Officer shall appoint a Director of Planning and Zoning. The Director of Planning and Zoning may, with the approval of the

County Administrative Officer, appoint a Deputy Director of Planning * * *."

* * *

"(c) Subject to the approval of the County Administrative Officer, the Director of Planning and Zoning shall appoint the Zoning Commissioner and Deputy Zoning Commissioner, * * *."

The *zoning* powers of the County were derived from certain public local laws enacted by the General Assembly from time to time between 1939 and 1955, rather than through the State Enabling Act, now codified as Code (1957), Art. 66B. See Chapter 715 of the Acts of 1939; Chapter 247 of the Acts of 1941; Chapter 877 of the Acts of 1943; and the Code of P. L. L. of Baltimore County (1955), Title 30. On the other hand, the County Commissioners chose to exercise the *planning* powers under the Enabling Act (Code [1939 and 1951], Art. 66B) until 1955, when the General Assembly enacted a public local law regulating planning and subdivision control in the County. See Chapter 610 of the Acts of 1955 and the Code of P. L. L. of Baltimore County (1955), Title 25. The Zoning Commissioner, whose office was created by Chapter 247 [1941], had broad powers over original zoning and rezoning but was considered to be a subordinate officer in the Department of Public Works. The Department of Planning, however, was a separate governmental agency until 1955 when Chapter 610 [1955] placed the Director of Planning under the executive span of control as was the Zoning Commissioner. Nevertheless, each had no official connection with the other. The defects of this awkward arrangement were manifest in *Lynn v. Goldman, supra,* where the Department of Planning approved a subdivision plat which allegedly violated certain zoning regulations.

In 1955, the Charter Board of the County (the Charter Board) drafted a Home Rule Charter pursuant to the provisions of Article XI-A of the Constitution of Maryland, known as the Home Rule Amendment. One of its chief objectives was the consolidation of many of the separate agencies of the county government. However, because planning

and zoning was in a state of flux, the Charter Board decided to leave to the County Council the problem of consolidating and reorganizing the planning and zoning functions. See proposed Home Rule Charter, *Report to the Voters of Baltimore County,* pp. xx-xxii. Rather than stabilize an undesirable result in the Charter, it was deemed to be more desirable to give the County Council a measure of flexibility in this area. In keeping with this policy, the Charter Board set up a skeleton organization which would permit future reforms and left the details to be worked out by the County Council. The Zoning Commissioner and the Deputy Zoning Commissioner were removed from the Department of Public Works and placed in a new office of Planning and Zoning established by Section 522 of the Charter. In the *tentative* draft of this section, the Director of Planning was also named as the "head of the Department," a term which would have carried with it the right to appoint the subordinate officers of the agency, including, of course, the Zoning Commissioner and his Deputy. In the *final* draft, however, this provision was eliminated, and the new agency was left without a departmental head, or, more correctly, it was in effect given three heads— a Director of Planning, a Planning Board and a Zoning Commissioner. See *Reporter's Notes* (to the Proposed Home Rule Charter), p. 124.

Since no single officer was named as the "head" of the office with power to appoint subordinates, it was necessary at the same time to revise Section 522 [Charter] to provide specifically for the appointment of the Director of Planning, the Zoning Commissioner, and a Deputy Zoning Commissioner by the County Administrative Officer. Otherwise, the Charter would have contained no provision for the appointment of the officers referred to. Simultaneously, however, Section 524 [Charter] was also changed so as to empower the County Council by legislative act to reorganize the office of Planning and Zoning at a later date and to provide for and redefine the duties of a Director of Planning and Zoning as "head of said office." The "original" organization of the new office tentatively contemplated by Section 522 was thus postponed and the power to "reorganize" it was conferred upon the

County Council by Section 524. Stated otherwise, the reform tentatively taken in Section 522 was temporarily withdrawn and the power to restore it was given to the County Council by Section 524.

In enacting the Bill, the County Council did no more than exercise the reorganization power conferred upon it by the Charter. The Bill accomplished two objectives: First, it changed the status of the Zoning Commissioner from that of a co-department head to that of a subordinate officer, and made the Director of Planning—renamed the Director of Planning and Zoning—the sole administrative head of the office. These aspects of the Bill were sustained by the trial court. Secondly, it provided that the subordinate officers of the new agency—the Zoning Commissioner and his Deputy —should be appointed by the "head" of the office instead of by the County Administrative Officer, but subject, however, to the latter's approval. This part of the Bill was declared to be invalid by the court because it believed it was in conflict with the provisions of Section 522 [Charter].

The petitioner contends that the Bill as a whole conflicts with both the Home Rule Amendment (Article XI-A of the Constitution) and the Express Powers Act (Article 25A of the Code). There is no merit to these contentions. Article XI-A grants to a home rule county full power to enact local laws on the subjects covered by the Express Powers Act and denies the General Assembly power to enact public local laws on such subjects for the county. Code (1957), Art. 25A, § 5(Q), empowers a chartered county "[t]o provide for the appointment and removal of all county officers except those whose appointment or election is provided for by the Constitution or public general law * * *." Thus, the Bill concerns the appointment of "county officers," which is definitely within the scope of this provision. The Bill is not a "planning" or "zoning" law since it does not alter existing planning and zoning regulations or procedures, or affect the substantive rights of any person. Furthermore, all of the officials referred to in the Bill hold office under local law (Titles 25 and 30 of the County Code) and are therefore squarely within the purview of § 5(Q), *supra.*

The petitioner also contends that the power to reorganize the office of Planning and Zoning conferred on the County Council by Section 524 [Charter] cannot be exercised by it without affirmative action by the General Assembly. There is also no merit to this contention. In *Heubeck v. City of Baltimore,* 205 Md. 203, 107 A. 2d 99 (1954), we held that the City had power to enact rent control legislation, even in the absence of an enabling act, *provided* such legislation was not in conflict with the Constitution or a public general law. Because the substance of the section is prefixed by the phrase: "To the extent hereafter permitted by law," the petitioner argues that the County Council can exercise the power conferred upon it by Section 524 only if, as and when the General Assembly amends the Express Powers Act so as to specifically permit home rule legislation with respect to planning and zoning. It appears that the Charter Board did have some doubt as to the legality of reorganizing the office of Planning and Zoning until "legal authority * * * therefor is provided by Article 25A of the State Code." See *Reporter's Notes* to Section 524 [Charter], p. 125. But, we do not construe the phrase to require additional enabling legislation since the action taken by the County Council, providing for the appointment of county officers, was already specifically authorized by Section 5(Q) of the Express Powers Act. We think it is clear that the words "hereafter permitted" as used in Section 524 [Charter] refer only to the subject matter of the legislation which the County Council might seek to enact under its authority to legislate generally. The word "hereafter" refers to the effective date of the Charter. See the definition thereof in Section 1009(k) of the Charter.

The petitioner also attacked the Bill because it conflicts with a general law. Specifically, he argues that the Bill is in conflict with the State Zoning and Planning Act (Code [1957], Article 66B) since the state statute is silent as to a Director of Planning and a Deputy Director of Planning. But that is a question we do not reach in this case. Neither of these offices was created by the Bill, but they were authorized by Chapter 610 [1955], a public local law enacted

by the General Assembly before the Charter became operative, which local law is still in force. In attacking the Bill on this ground the petitioner has misconstrued the effect of Section 3 of Article XI-A [Constitution], which explicitly authorized a chartered county to "repeal or amend local laws of said * * * County enacted by the General Assembly, upon all matters covered by the express powers granted * * *" by the Express Powers Act. As was pointed out in the *Heubeck* case, *supra,* a conflict exists only when a local law prohibits something permitted by the legislature, or permits something prohibited by the legislature. The Bill does neither. Furthermore, one of the purposes of "home rule" was to afford chartered counties a certain measure of independence from the General Assembly. See *State v. Stewart,* 152 Md. 419, 422, 137 A. 39 (1927).

Much of what we have said with regard to the original appeal is equally applicable to the cross-appeal with respect to the validity of subsection (c) of the Bill. The subsection empowered the Director of Planning and Zoning to appoint the Zoning Commissioner and his Deputy subject to the approval of the County Administrative Officer. The trial court was of the opinion that this provision violated Section 522 [Charter], which expressly provides that the Director of Planning, the Zoning Commissioner, and the Deputy Zoning Commissioner should be appointed by the County Administrative Officer subject to the approval of the County Executive. This is the same method by which the "*heads* of all offices and departments" are appointed under Section 403(d)1 of the Charter. (Emphasis added.) However, since no single officer was designated as "head" of the office of Planning and Zoning in the final draft of Section 522 as it was submitted to the voters, a patent ambiguity would have resulted if this section had not devised a temporary scheme for the appointment of the three officers in this *headless* agency. But, as the *Reporter's Notes* to Section 522 (p. 124) state, the Charter Board was "far from satisfied that this was an ideal arrangement." Consequently, as previously stated, a broad power was conferred on the County Council by Section 524 [Charter] to reorganize the office of Planning and Zoning

and to designate the Director of Planning and Zoning as "head of said office." One of the duties imposed by Section 506 of the Charter on "the head of each office and department" is that of appointing subordinate officers in his particular agency. In exercising the power conferred on the County Council by Section 524 to designate the Director of Planning and Zoning as the head of his office, the County Council in the Bill gave the Director as the head of his office the same duty as is imposed upon the heads of other offices and departments by Section 506, that is, the duty of appointing subordinate officers in his particular agency.

When the provisions of the Charter are construed as an integrated unit we think it is clear that the provisions of Section 522 [Charter] were intended to be subject to the reorganization provisions of Section 524 [Charter]. That this interpretation is a reasonable one is shown by two additional factors: (i) Section 522 is entitled "Organization of Office" while Section 524 is entitled "Reorganization of Office of Planning and Zoning;" and (ii) the concluding sentence of Section 522 provides that "unless and until otherwise provided by legislative act of the County Council in accordance with Section 524 of this Article," the several officers of the agency should continue to perform the same duties as before the adoption of the Charter.

Finally, the petitioner's construction of Sections 522 and 524 [Charter] ignores the basic objectives of the Charter. The planning and zoning functions were intended eventually to be integrated in a single unit. It would be unreasonable to suppose that the Charter Board and the voters in enacting the Charter intended to give the County Council power to designate the Director of Planning and Zoning as the head of the office and at the same time intended to deny the County Council power to enable the new "head" to appoint his subordinate. It should also be pointed out that subsection (c) does not grant to the head of the office the sole, unfettered and absolute power to appoint the Zoning Commissioner and his deputy. These appointments are still "[s]ubject to the approval of the County Administrative Officer." To reiterate, the only purpose of the specific provision in Section

522 [Charter] as to who should appoint the officers of the office of Planning and Zoning was to avoid a patent ambiguity in the Charter as to who should have the appointive power in this headless governmental agency pending its reorganization under Section 524 [Charter].

That part of the order of the trial court which enjoined the Director of Planning and Zoning from exercising the powers and duties of his office conferred upon him by subsection (c) of the Bill must be reversed, and that part of the order which denied all other prayers of the petitioner must be affirmed, which means that the petition for the writ of mandamus should have been dismissed in its entirety by the lower court.

*Order reversed in part, and affirmed in part, and petition dismissed, the costs to be paid by the appellant.*