635 A.2d 48

**MONTGOMERY COUNTY, Maryland**

v.

**WATERS LANDING LIMITED PARTNERSHIP et al.**

**No. 627, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 5, 1994.

Certiorari Granted May 17, 1994.

2

**4**

H. Christopher Malone, Sr. Asst. County Atty. and John J. Fisher, Asst. County Atty. (Joyce R. Stern, County Atty., on the brief), Rockville, for appellant.

Stephen W. Swartz, Bethesda, for appellee, Waters Landing.

Harry W. Lerch (Robert G. Brewer, Jr., Mark S. Antonvich and Lerch, Early & Brewer, on the brief), Bethesda, for appellee, Bellemead.

C. Robert Dalrymple, Todd D. Brown and Linowes and Blocher, on the brief, Silver Spring, for appellee, The Milton Co., etc.

Morton S. Gottlieb, on the brief, pro se.

Argued before CATHELL, MOTZ and MURPHY, JJ.

CATHELL, Judge.

Montgomery County, appellant, appeals the decision of the Circuit Court for Montgomery County holding that a development impact tax was invalid. Appellees, the Milton Company and Milton Knightsbridge Limited Partnership (Milton), Waters Landing Limited Partnership (Waters Landing), Bellemead Development Corporation (Bellemead), and Morton S. Gottlieb (Gottlieb), are the taxpayers. Appellant raises the following issues on appeal:

1. Whether the Court of Appeals in *Eastern Diversified [v. Montgomery County,* 319 Md. 45, 570 A.2d 850 (1990) ] decided whether Montgomery County had the authority to enact a development impact tax under Chapter 808, Laws of Maryland 1963.

2. Whether Montgomery County had the authority to enact a development impact tax under Chapter 808 and this authority was confirmed and clarified by Chapter 707, Laws of Maryland 1990.

3. Whether the development impact tax enacted in 1990 violates the Equal Protection Clause of the United States Constitution.

4. Whether Montgomery County had the authority under Chapter 808 to enact a development impact tax and therefore, the County could correct retroactively any errors or defects in the original enactment of the tax.

5. Whether the original enactment of the development impact tax in 1986 substantially complied with the notice provisions of Chapter 808.

6. Whether a County or Municipality may enact a law to take effect contingent upon the subsequent enactment by the General Assembly of enabling legislation.

7. Whether the development impact tax is an excise tax and not a tax on intangible personal property.

8. Whether the Maryland Tax Court's [j]urisdiction is established by statute and can not be expanded by County law, consent of the parties, or estoppel.

9. Whether a premature appeal to the Maryland Tax Court must be dismissed for want of jurisdiction.

## FACTS/PROCEDURAL HISTORY

In 1986, Montgomery County enacted a development impact fee that was codified as Sections 49A–1 through 49A–14 of the Montgomery County Code. The development impact fee was a "fee" assessed on new construction within designated areas in Montgomery County, namely Germantown and Eastern Montgomery County, and had to be paid before a building permit would be issued for the new construction. The fee was assessed on a pro rata basis to fund a portion of the unprogrammed highway improvements needed to accommodate the traffic generated by new development. A developer challenged the County's authority to enact the fee. Montgomery County claimed it had authority under the County's home rule powers granted in the Express Powers Act, Md.Code (1957, 1987 Repl.Vol.), Art. 25A § 5. The issues were taken to the Court of Appeals, which held that:

In this case, the development impact fee imposed on new development is exacted solely for revenue purposes, is an involuntary payment of money, and the funds raised by the

fee are used to finance road construction which benefit the general public. Chapter 49A thus imposes a tax which Montgomery County is without authority to enact, and the development impact fee is therefore invalid.

*Eastern Diversified v. Montgomery County*, 319 Md. 45, 55, 570 A.2d 850 (1990). In a footnote, the Court stated that "We do not decide whether the tax in this case is an excise, a property, or another type of tax." *Id.*

Chapter 808, Laws of Maryland 1963 was on the books at that time. Montgomery County, in its brief before the Court of Appeals, argued that if the Court held the fee invalid under Article 25A, the Court should hold that it is a valid tax under Chapter 808. Eastern Diversified argued that the Court should not address whether the fee would be valid as a tax under Chapter 808 because this issue was not raised below. The Court of Appeals declined to address Chapter 808, apparently because it had not been addressed at the trial court.

Thereafter, in response to *Eastern Diversified*, Montgomery County reimposed the impact fee as a tax in Emergency Bill 33–90 adopted April 27, 1990, which was codified in Sections 52–47 through 52–59 of the County Code under the authority of Chapter 808. Section 3 of Emergency Bill 33–90 provided that the act legalized and ratified the collection of all impact fees and taxes since July 29, 1986. The General Assembly then enacted Chapter 707, Laws of Maryland 1990, effective June 1, 1990 with the "purpose of clarifying and confirming the authority of Montgomery County to impose . . . development impact taxes. . . . " The development impact tax was then challenged by appellees in the case *sub judice.*

Gottlieb, Milton, and Bellemead paid impact taxes, were issued building permits, filed claims for refunds which were denied, and appealed to the Tax Court. The County is contending that Gottlieb filed his appeal to the Tax Court before the County acted on his request for a refund. Waters Landing submitted a letter of credit in lieu of payment of

impact taxes and was issued building permits. It did not file a claim for refund but nevertheless appealed to the Tax Court.

The Maryland Tax Court made the following findings:

[The Court of Appeals in *Eastern Diversified* did not hold that] the County is without authority to impose an impact tax[, but rather it held] ... that the County cannot [sic] impose a tax and call it a fee.... [T]he grant of taxing authority by the Legislature to Montgomery County was not considered by the Court to be a relevant concern.

The impact tax is an excise tax which Montgomery County may enact through the authority vested by Chapter 808 of the Laws of Maryland, 1963. However, it did not do so until the effective date of Emergency Bill 33–90, April 27, 1990.

. . . .

... [T]here is nothing for the County to adopt and validate because the impact fee was a nullity. [The impact tax may not be retroactively applied because the bill reimposing the fee as a tax] ... does not rectify a technical defect. There is a substantial change from the unauthorized fee to the authorization of a tax. The power of imposition, standing alone, cannot create retroactively, a tax the County now says it intended to levy.

... [T]o the extent Bill 33–90 is retroactive, it is invalid....

. . . .

... [T]he impact tax applied to the assigned impact tax districts ... [is] rationally and reasonably based. [There is no] ... violation of [the] [E]qual [P]rotection [Clause in the 14th Amendment to the United States Constitution.]

. . . .

... [Gottlieb] appealed to ... [the Tax] Court pursuant to the direction of the County. [There is] ... appropriate jurisdiction and no basis for dismissal.

The County appealed the Tax Court's decision to the Circuit Court for Montgomery County. The circuit court's findings, which we rephrase as follows, include:

The Court of Appeals in *Eastern Diversified* held that Montgomery County did not have authority under Chapter 808, Laws of Maryland 1963 to enact a development impact tax.

Since the County did not have authority under Chapter 808, the County did not have authority to enact such a tax until Chapter 707 became effective and therefore, the tax could not be retroactively applied.

Waters Landing had standing to appeal to the Tax Court because the posting of the bond is tantamount to payment.

Gottlieb had standing because the October 4th letter notifying him of the validity of the tax was tantamount to a denial of a request for a refund.

The development impact tax, in its current form, violates Article 15 of the Maryland Declaration of Rights in the Maryland Constitution which requires uniform treatment as to the assessment of property taxes.

The notification requirements of Chapter 808 were not met.

The development impact tax was not an excise tax but a tax on an intangible.

This appeal followed.

## 1. THE *EASTERN DIVERSIFIED* CASE

Montgomery County contends that the Court of Appeals, in *Eastern Diversified,* did not decide whether it had authority to enact an impact tax under Chapter 808, Laws of Maryland 1963. The Tax Court found that the Court of Appeals did not consider the authority to enact a development impact tax in general under Chapter 808, but instead, considered the authority of the County to enact a tax which it called a fee. The Tax Court held that the County was without authority to enact a tax in that manner under Chapter 808. The circuit court interpreted *Eastern Diversified* as holding that the county did

not have authority under Chapter 808 to enact a development impact tax. The Tax Court and the circuit court were incorrect. The Court of Appeals stated in *Eastern Diversified:*

> In this case, the development impact fee imposed on new development is exacted solely for revenue purposes, is an involuntary payment of money, and the funds raised by the fee are used to finance road construction which benefit the general public. Chapter 49A thus imposes a tax which Montgomery County is without authority to enact, and the development impact fee is therefore invalid.

*Eastern Diversified,* 319 Md. at 55, 570 A.2d 850. In footnote 4, the Court of Appeals stated "We do not decide whether the tax in this case is an excise, a property, or another type of tax." *Id.*

The holding of the Court of Appeals in *Eastern Diversified* is that the county did not have authority *under its home rule powers in Article 25A* of the Annotated Code to enact a development impact tax. The Court, however, did not address whether the tax could be validly enacted under Chapter 808. The Court made no mention of Chapter 808 in its decision. Chapter 808, § 1, paragraph (a) provides:

> The County Council for Montgomery County is hereby empowered and authorized to have and exercise, within the limits of the county . . . the power to tax to the same extent as the state has or could exercise said power within the limits of the county as a part of its general taxing power. . . .

Chapter 808, § 1, paragraph (b) limits Montgomery County's authority to tax by listing several exceptions to the County's general taxing power including "that the Council shall not have the power to impose any tax upon any . . . intangible personal property. . . ."

The Court of Appeals, in *Montgomery County v. Maryland Soft Drink Ass'n,* 281 Md. 116, 127–31, 377 A.2d 486 (1977), had earlier recognized Montgomery County's general taxing authority under Chapter 808, codified in section 52–17 of the Montgomery County Code, subject to certain limitations. The

tax, which the Court upheld, was an excise tax Montgomery County placed on the act of supplying non-reusable beverage containers. *Id.* at 125–27, 377 A.2d 486.

Based on *Maryland Soft Drink Association,* the language of Chapter 808, and the Court's failure to mention Chapter 808, we interpret footnote 4 in *Eastern Diversified* to mean the Court of Appeals was not deciding whether a development impact tax in general would be valid under Chapter 808. Certainly, the Court of Appeals was aware of the existence of Chapter 808; in its brief to the Court of Appeals in *Eastern Diversified,* Montgomery County argued that if the Court found the fee was in fact a tax, the Court should hold the County had authority to enact the tax under Chapter 808. Eastern Diversified argued in its brief that since the County had not raised the issue of its authority to enact a development impact tax under Chapter 808 in the circuit court, the County could not raise the issue on appeal. We think the footnote indicates that the Court accepted Eastern Diversified's position that the matter had not been raised and thus was not then properly before that Court.

The Circuit Court for Montgomery County interpreted the holding of *Eastern Diversified* to mean that the County did not have authority to enact a development impact tax, even under the authority of Chapter 808. As we have indicated, we think that the circuit court's interpretation does not properly reflect the Court of Appeals' holding. A determination of Montgomery County's authority to enact a "development impact tax" would necessarily involve a decision as to what type of tax the "development impact tax" was. If it was a tax on intangible personal property or another type of tax prohibited by Chapter 808, § 1, paragraph (b), then the County would not have any authority to impose it under Chapter 808. If, however, a development impact tax was a type of tax that was within the State's power to assess and not otherwise prohibited, then the County would have authority to enact it. Thus, if Chapter 808 had been considered, the Court would have had to decide the issue that it stated it was not deciding—the type

of tax. It is in that context that footnote 4 has the most relevance to the Court's decision.

## 2. MONTGOMERY COUNTY'S AUTHORITY TO ENACT A DEVELOPMENT IMPACT TAX UNDER CHAPTER 808

### 7. THE IMPACT TAX IS AN EXCISE TAX

Appellant gives two reasons for finding that it had authority under Chapter 808 to enact a development impact tax: (1) Chapter 808, § 1, paragraph (a) provides "The County Council for Montgomery County is ... authorized to have ... the power to tax to the same extent as the state has ... as a part of its general taxing power;" and (2) Chapter 707 enacted in 1990 was enacted "[for] the purpose of *clarifying* and *confirming* the authority of Montgomery County to impose and provide for the collection of development impact taxes...." The only statute that could have been clarified and confirmed by Chapter 707 of the Acts of 1990 was Chapter 808 of the Acts of 1963.[1]

By its use of language that necessarily related to the prior statute in the context of impact fees, the Legislature recognized that impact taxes are excise taxes, not property taxes. We further note that Chapter 808 contains an extensive listing of various taxes that are exempted from the taxing authority there granted. The exemptions include: Gasoline taxes, motor vehicle registration, titling taxes, motor vehicle taxation, income tax, taxes on parimutuel betting, bonus taxes, taxes on corporations, franchises, recordation taxes, corporate recordation taxes, taxes on bank deposits, taxes on insurance premiums, inheritance taxes, estate taxes, taxes on commissions, tobacco taxes, sales taxes, taxes on alcoholic beverages and on intangible personal property. Conspicuously absent from the

---

1. Chapter 707 was introduced in the Legislature prior to the introduction of Montgomery County Emergency Bill 33–90. Thus, Chapter 707 could only have been intended to address Chapter 808. Evidently, Emergency Bill 33–90 anticipated the passage of Chapter 707.

list of exemptions from the authority being granted Montgomery County is "impact taxes."

The general principles of statutory construction applicable in regard to the meaning of Chapter 808 of the Acts of 1963 and Chapter 707 of the Acts of 1990 are important to the issue of whether Chapter 808 permits the taxes in the first instance, but of particular importance is that rule of construction used when statutes contain exemptions.

> Because the interpretation of a statutory provision exempting certain activities from its scope is involved, we are constrained to apply a strict construction analysis....
>
> ... "[S]trict construction" is in no way violated if the words ... are given their full meaning. [Citation omitted.] The term "excludes mere implications, but does not require a literal and blind adhesion to mere words."

*Howard County v. Carroll,* 71 Md.App. 635, 644–45, 526 A.2d 996 (1987) (citations omitted), quoting from *McKeon v. State,* 211 Md. 437, 443–44, 127 A.2d 635 (1956). One of the early cases dealing with such provisions in statutes was *Johns v. Hodges,* 62 Md. 525, 537 (1884), where the Court opined:

> The office of a proviso in a statute is either to restrain its general application or except something from it and exclude misinterpretation. The same authority says it is always to be strictly construed. This provision is in the nature of a *proviso,* and must be construed accordingly, by giving it a strict construction and restricting the exception within the limits which the language naturally imports. [Citation omitted.]

In the case *sub judice,* Chapter 808 provides that Montgomery County is authorized to "tax to the same extent as the state ... could ... as a part of its general taxing power...." The Act then contains the specific exceptions to the County's taxing authority we have mentioned. Under the strict construction rule in regard to provisions contained in statutes, and given the language of the statute, the act confers upon Montgomery County all of the State's power to tax except in those areas specifically exempted. By the inclusion

of general broad taxing authority, and the inclusion of specific exemption provisions to that authority it is clear that the General Assembly did not intend to impose any limits upon the County's taxing powers other than those contained in the exemptions. Chapter 707's clarifying and confirming purposes, coupled with the specific reference to impact taxes, indicates the Legislature's belief that its intentions when it enacted Chapter 808 were to give the County authority to enact impact taxes. We hold, therefore, that the County had the power to impose impact taxes in 1986, despite the fact that the statute actually imposing them recited an inapplicable statutory source of power. The Court of Appeals opinion in *Eastern Diversified*, in the circumstances of that case, was limited to a holding that Article 25A (the Home Rule Act) did not grant the authority. It did not address Chapter 808. Therefore, its holding there in no way applies to Chapter 808's separate statutory authority. We shall further address this issue in holding that the development impact tax is an excise tax that the County had authority to enact under the language of Chapter 808, § 1, paragraph (a) and *Maryland Soft Drink Ass'n*, 281 Md. at 127, 377 A.2d 486.

"The line that separates an excise tax from a property tax is a difficult one to draw, and courts have not fully succeeded in developing a truly useful definition of either concept." *Weaver v. Prince George's County*, 281 Md. 349, 356, 379 A.2d 399 (1977) (citing *Blaustein v. Tax Comm'n*, 176 Md. 423, 426, 4 A.2d 861 (1939)). A three-part test, however, has been developed to help distinguish between property and excise taxes, which is: (1) the designation placed on the tax by the legislature; (2) the subject matter of the tax; and (3) the incidents of the tax, *i.e.*, the manner in which it is assessed and the measure of the tax. *Id.*

The legislation defines this development impact tax as "a pro rata tax imposed before a building permit is issued for development in an impact tax district which is intended to defray a portion of the costs associated with impact highway improvements in the tax district that are necessary to accom-

modate the traffic generated by the development." Montgomery County Code sec. 52–47(h). This definition does not clearly designate the tax as either a property tax or an excise tax.

"[A] property tax is a charge on the owner of the property by reason of his ownership alone without regard to any use that might be made of it. . . ." *Weaver*, 281 Md. at 357, 379 A.2d 399 (citing *Bromley v. McCaughn*, 280 U.S. 124, 136, 50 S.Ct. 46, 47, 74 L.Ed. 226 (1929)); *Dawson v. Kentucky Distilleries Co.*, 255 U.S. 288, 294, 41 S.Ct. 272, 275, 65 L.Ed. 638 (1921); *Flint v. Stone Tracy Co.*, 220 U.S. 107, 152, 31 S.Ct. 342, 349, 55 L.Ed. 389 (1911); *Herman v. M. & C.C. of Baltimore*, 189 Md. 191, 197, 55 A.2d 491 (1947)). "[T]he modern conception of an excise tax includes any tax not levied directly on the ownership of property as such." *Weaver*, 281 Md. at 362, 379 A.2d 399. The subject matter of this tax is the end point decision to apply for actual permits to physically develop real property. Thus, the tax at issue here is on the use of property and is not a tax on the owner of the property solely because of his or her ownership of property. Should the owner never decide to develop the property at all, no impact tax would ever need be paid and the owner would continue to own the property without this tax being imposed upon it. Thus, it is not a tax on ownership, *i.e.*, it is not a property tax. The subject matter of the tax is a single definitive use of the property and, therefore, more like an excise tax.

The development impact tax is assessed in the following manner. First, impact tax districts are established within the county. These are areas where it has been determined that the current (and presently planned) highway and transportation systems will be overburdened by additional development. Second, only when a party attempts to build or physically improve his or her property is there assessed a development impact tax based on "the number and type of dwelling units and square footage and type of nonresidential development," Montgomery County Code sec. 52–48(h), before a building permit is issued.

"[I]t has been held that where a tax is levied directly by the Legislature without assessment and is measured by the extent to which a privilege is exercised by a taxpayer without regard to the nature or value of his assets, it is an excise. Where, however, the tax is computed upon a valuation of the property and is assessed by assessors, and where the failure to pay the tax results in a lien against the property it is a property tax, even though a privilege might be included in the valuation." *Weaver*, 281 Md. at 358, 379 A.2d 399 (citing *Society for Savings v. Coite*, 73 U.S. (6 Wall) 594, 610, 18 L.Ed. 897 (1868); *Maryland Soft Drink Ass'n*, 281 Md. at 127, 377 A.2d 486; *Walker v. Bedford*, 93 Colo. 400, 26 P.2d 1051, 1053 (1933)). Moreover, the manner in which this tax is levied is more like an excise tax than a property tax because it is based on the size and type of the proposed development and not the value of the property or an assessment of its value. Appellees maintain that the size of the development determines its value and therefore basing the tax on size is the same as basing it on value. We disagree. Size may be one indication of value but, at best, it is an indirect indication and in no event is it the sole factor in determining value.

In addition, although the failure to pay the tax can eventually result in a lien against the property, Montgomery County Code sec. 52–50(i), which is normally indicative of a property tax, *Weaver*, 281 Md. at 358, 379 A.2d 399, the failure to pay the tax will first prevent the Department of Environmental Protection from issuing a building permit. Montgomery County Code sec. 52–50(c). It appears that, under the County Code, it is only in the rare and unlikely situations where, contrary to sec. 52–50(c), the Department of Environmental Protection issues a building permit before the tax has been paid or where the property is developed without a building permit, that the property would be subject to a lien for failure of the property owner to pay the development impact tax. In other words, the primary method that the County will use to collect the tax is to wait until the tax on the use is paid before issuing the permit permitting construction of the land or structural improvements. Only in rare cases would situations

occur where a lien would be placed on property for the failure to pay this tax. Further, section 52–18D of the Montgomery County Code permits a lien to be imposed on the property of a taxpayer who fails to pay any excise tax. Thus, under the Montgomery County taxing scheme, the fact that a lien is placed on a taxpayer's property for failure to pay a tax is not an indication of whether the tax is a property or an excise tax.

■ Property taxes are payable on specific dates. *Weaver,* 281 Md. at 364, 379 A.2d 399. The development impact taxes are not due on a specific date but rather are due before a building permit is issued.

For all of these reasons, we hold the development impact tax is an excise tax and not a tax on intangible property.

### 3A. The MARYLAND CONSTITUTION [2]

■ In finding the tax unconstitutional, the circuit court stated:

I am also going to since you are going on these issues take also a somewhat giant step which I am not totally comfortable with but hold that the tax itself, the impact tax, and it is not to suggest that you cannot impose an impact under the authority granted by the legislature that would meet constitutional muster, but the tax as it is imposed in this instance is constitutionally invalid.

... [A] subdivision plan approval is subject to the requirement that they establish that the existing facilities are adequate to support the development of that property including traffic which must make a specific finding.

. . . .

Since there is a requirement and a determination that the property is suitable for development and the present road conditions are sufficient to meet the traffic that is going to be generated by the proposed development to then put an impact tax for the improvement of the road to now meet

---

**2.** The circuit court based its erroneous finding, in part, on the Maryland Constitution. We, accordingly, address its effect.

what they say is traffic that is going to be generated by the development which is now not sufficient is an unconstitutional tax on that development for the benefit of both existing and future developments.

I guess if you had one where it said fine, we will improve the roads and the improvement will end right at your property line the argument might be somewhat different. But to suggest that the entire project that they have to pay a proportion of it in order to generate sufficient revenue to meet the County's proposed projects for road improvements violates the *Maryland Constitution of equal taxation* and accordingly [I] will strike down the entire impact tax as being unconstitutional in its application to require a building permit for these developments before they can get that building permit.   [Emphasis added.]

Earlier in its decision, the circuit court found that the impact tax was not an excise tax but a tax on an intangible.  It thus appears that the circuit court based its decision that the tax was unconstitutional, at least in part, on Article 15 of the Maryland Declaration of Rights in the Maryland Constitution. Article 15 of the Maryland Declaration of Rights provides:

That the levying of taxes by the poll is grievous and oppressive and ought to be prohibited; that paupers ought not to be assessed for the support of the government; that the General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy;  yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community.

Cases interpreting Article 15 "go to the extent of holding, and no further, that when taxes are *laid directly upon property, they must be equal and uniform upon all property in the State.*" *State v. Philadelphia, Wilmington and Baltimore R.R. Co.*, 45 Md. 361, 378 (1876) (emphasis in original). "As the current formulation of the Article makes clear, however, the requirement that taxes be equal and uniform applies only to property taxes." *Weaver*, 281 Md. at 355, 379 A.2d 399 (citations omitted). The language of the Article, "[Y]et fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community," has been interpreted to "depart from the principle of uniformity in taxation where the particular revenue measure enacted was an excise...." *Id.* As we have decided, the circuit court erred in determining the development impact tax was a tax on intangible personal property. It is an excise tax, not a property tax. Therefore, the tax is not subject to the uniformity requirements of Article 15.

### 3B. THE UNITED STATES CONSTITUTION [3]

It is not clear that the circuit court held the tax unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Since the parties raise the Equal Protection issue, however, we shall address it.

The development impact tax passes constitutional muster under the Equal Protection Clause of the 14th Amendment to the United States Constitution. The Supreme Court stated in *Nordlinger v. Hahn*, —— U.S. ——, ——, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992) that

this Court's cases are clear that unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the

---

**3.** We note that the United States Supreme Court has recently granted certiorari to hear the appeal of a property owner from *Dolan v. City of Tigard*, 317 Or. 110, 854 P.2d 437 (1993). One of the issues to be presented is the constitutionality of impact fees.

basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.

There have been no claims that the development impact tax jeopardizes the exercise of a fundamental right or that it categorizes on the basis of an inherently suspect characteristic. Therefore, the tax must be examined under the rational basis test.

> In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, see *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 174, 179, 101 S.Ct. 453, 459, 461, 66 L.Ed.2d 368 (1980), the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decision maker, see *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981), and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational, see *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. [432] at 446, 105 S.Ct. [3249] at 3257. This standard is especially deferential in the context of classifications made by complex tax laws. "[I]n structuring internal taxation schemes 'the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.'" *Williams v. Vermont,* 472 U.S. 14, 22, 105 S.Ct. 2465, 2471, 86 L.Ed.2d 11 (1985) quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973).

*Id.* at —, 112 S.Ct. at 2332.

The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not [en]trenching upon the prerogatives of the National Government or violating the guarantees of the Federal Constitution, the States have the attributes of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to

the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value.

*Villa Nova v. Comptroller,* 256 Md. 381, 388, 260 A.2d 307 (1970) (quoting *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 526–27, 79 S.Ct. 437, 440–41, 3 L.Ed.2d 480 (1959)). "[T]he Legislature, when it passes a revenue measure, has the power to classify, and may impose varying tax burdens on different groups. It is only when the attempted classification has no reasonable basis in the nature of the . . . [classification] and burdens are imposed unequally on taxpayers between whom there is no real difference that the courts will interfere." *Id.* at 391, 260 A.2d 307.

Appellees give two reasons why the development impact fee violates the Equal Protection Clause: (1) when the lot to be developed is subdivided there is a determination at this point that there is an adequate highway system to support development of the subdivision and (2) the highway and transportation systems in other areas of the county are inadequate to meet the needs of new development as set by the Annual Growth Policy yet are not subject to the development impact tax.

■ The appellees maintain that because the Planning Board was required to determine that all public facilities, including roads and roadway capacities, would be adequate to serve the development before it approved a developer's subdivision under section 50–35(k) of the Montgomery County Code, the development of appellees' property does not require

the road system to be expanded [4]. Thus, appellees argue the tax on new development is an unconstitutional classification because it benefits existing and future development. We disagree. In many jurisdictions, a significant amount of time, often decades, can elapse between when a piece of property is subdivided and when actual construction of land or structural improvements on the property begins. It is not only possible but, if an area is expanding rapidly, highly probable that the needs of an area for road expansion will have changed between the approval of a subdivision and the County's determination that an area is an impact district. We find nothing arbitrary about a tax that recognizes this.

Although the road improvements financed, in part, by the impact taxes will benefit the general public as well as the new development, *Eastern Diversified,* 319 Md. at 55, 570 A.2d 850, we hold the classification between new and existing development is rational. The County recognized several alternatives available to solve the traffic congestion problem. One option was to increase taxes on all residents to raise the funds needed for road improvements. Montgomery County Code sec. 52–48(c)(2). The County relies, in part, on the fact that improvements would not be necessary if the new developments were not to be built. Thus, they contend the decision to impose an impact tax as opposed to raising taxes on all property owners is a rational one and the classification legitimate according to the County's position. This is especially true, according to the County's position, in light of the fact that the existing development pays for a portion of the road improvements and expansion through already existing tax schemes. *See Sanitary Comm'n v. Noel,* 155 Md. 427, 434, 142 A. 634, *appeal dismissed,* 278 U.S. 573, 49 S.Ct. 94, 73

---

**4.** If the circuit court found the tax violated the United States Constitution, it is basically on this ground. The circuit court found that since the Department of Transportation gives a result of a study on the traffic situation to the Planning Commission, and the Department of Transportation is an expert body on traffic, the Planning Commission, which has authority to approve the subdivision, is not qualified to make its own independent determination of traffic. It makes a similar argument as to the County Council. We disagree.

L.Ed. 513 (1928) (holding higher taxes on those residents that receive a greater benefit was not an arbitrary classification).

Appellees argue that if the circumstances surrounding the ability of the existing roads to meet the needs of the community change, the county's only option in attempting to deal with this problem is not to allow any future subdivisions and that the county is essentially powerless to do anything to control development on property that has been subdivided. We disagree.

■ The fact that a piece of property is subdivided does not in and of itself create a vested property interest. *Washington Suburban Sanitary Comm'n v. TKU Associates*, 281 Md. 1, 22–23, 376 A.2d 505 (1977) (holding a dedication of a right-of-way in connection with a subdivision did not vest rights in the property owner for the purpose of estopping the County from changing the zoning classification absent a showing that the Planning Commission or County knew that the sewer permit would not be granted or that the County's subdivision regulations guaranteed the zoning of the property would not change). A party does "not acquire vested or substantive rights by obtaining ... approval of the subdivision plan" under Baltimore County's regulations. *Miller v. Forty West Builders*, 62 Md.App. 320, 330, 489 A.2d 76 (1985). There is nothing in Montgomery County's regulations that give a party a vested right to acquire a building permit simply because the Planning Commission approved the subdivision of property.

■ Although the County has not classified the areas as impact tax districts or placed them in moratorium, the classification between development in the impact tax districts and development in areas that are not in tax districts but have inadequate roads is also legitimate. In determining whether an area should be classified as an impact tax district, the county council considers the following factors:

(1) The Annual Growth Policy;

(2) The standards incorporated in the [Adequate Public Facilities Ordinance] APFO;

(3) The projected build out and timing of the projected build out of planning policy areas;

(4) The staging ceiling in planning policy areas;

(5) The need for and cost of unprogrammed highways necessary to raise the staging ceiling or provide necessary improvements in support of projected development; and

(6) Any other factors as the County council finds relevant.

Montgomery County Code sec. 52–59(b).

Appellees point to other areas in Montgomery County that have "no remaining ceiling capacity," and were placed in "moratorium" but are not subject to an impact tax: [5] Aspen Hill, Bethesda CBD, Damascus, Gaithersburg East, Gaithersburg West, and North Bethesda. Appellees claim the failure of the County to classify these areas as impact districts makes the classification of Germantown (East and West) and Eastern Montgomery County (Fairland/White Oak) unconstitutional. We disagree. The County Council expressed, in a memo dated October 10, 1990, to the County Executive, rational reasons for not classifying some areas as impact districts.

As to the Aspen Hill area, the County was considering making this area an impact district but needed to update the Aspen Hill Master Plan to determine how to strike a balance between its build out land use and its ultimate transportation network, because most of its planned transportation network has already been built. As to Bethesda CBD, there is little opportunity to add to transportation capacity and any new capacity would be used primarily by traffic generated from existing housing and employment but not new development.

---

**5.** We note that if an area was placed in true and actual moratorium status, *i.e.*, no further development was permitted, then a party in an area subject to an impact tax, but not placed in moratorium, could not logically argue that he or she was denied equal protection of the laws. This is because an impact tax would be less onerous on a party seeking to develop his or her property than not being permitted to develop at all. We do not, at this time, address the issue of Montgomery County's power to place an area in moratorium for convenience purposes, *i.e.*, traffic congestion, as opposed to placing an area in moratorium for safety purposes, *i.e.*, inadequate sewage facilities.

As to Damascus, the road congestion is caused by through traffic, so the County determined it would be inequitable to require new development to pay for roads needed and used mainly by through traffic; also, the County determined that the congestion can be better resolved by encouraging the state to accelerate the reconstruction of several roads including a possible bypass. In the Gaithersburg East area, the completion of several roads is expected to occur shortly, which, in turn, is expected to relieve the congestion problem. In the Gaithersburg West area, the County is considering placing it in an impact district but is conducting further research to develop a fully workable concept.

In Bethesda CBD, Damascus and North Bethesda new development is not the primary reason there is no remaining staging ceiling capacity (staging ceilings refer to the permitted developmental levels that become effective as particular public facilities, sufficient to accommodate that level of development, are completed or scheduled to be completed). The reasons include thru-traffic loads, already programmed roads under construction, no reasonable way to expand public roads, build-out, etc. Thus, there exists a rational basis for treating new development in these areas differently than new development in Germantown and Eastern Montgomery County, which the County determined is causing the need to expand the highway system. In Gaithersburg East, the fact that programmed highways are expected to relieve the traffic congestion and there is no need to build unprogrammed highways provides a rational basis to treat the new development in this area differently than the new development in the existing impact districts, where unprogrammed highways must be built. Gaithersburg West and Aspen Hill are candidates for becoming impact districts, but further plans for these areas must be completed before the County can make a decision.

The validity of impact fees or taxes to fund construction of public roads has been the subject of litigation in several jurisdictions. The appellate courts in those jurisdictions, like the Court of Appeals in *Eastern Diversified*, have generally abrogated the fees on the ground that the municipality exceed-

ed its authority. *New Jersey Builders Ass'n v. Bernards Township,* 108 N.J. 223, 528 A.2d 555, 560 (1987); *Broward County v. Janis Dev. Corp.,* 311 So.2d 371, 375–76 (Fla.App. 4th Dist.1975). *See also Albany Area Builders v. Guilderland,* 74 N.Y.2d 372, 547 N.Y.S.2d 627, 630, 546 N.E.2d 920, 923 (N.Y.1989) (holding Guilderland's local law was preempted by New York state law which provided a comprehensive scheme for funding road construction). The distinction between those cases and the case *sub judice* is Chapter 808, which gives Montgomery County broad taxing authority, authority that was lacking in those other jurisdictions. *See also Home Builders v. Board of Palm Beach County Comm'rs,* 446 So.2d 140 (Fla.App. 4th Dist.1983), *cert. denied,* 451 So.2d 848 (Fla.1984), *appeal dismissed,* 469 U.S. 976, 105 S.Ct. 376, 83 L.Ed.2d 311 (1984) (holding that the impact fee there imposed did not violate the Equal Protection Clause of the Fourteenth Amendment using the rational basis test we discuss here).

We likewise hold that the impact tax imposed in the case *sub judice,* does not violate the Equal Protection Clause of the Fourteenth Amendment.

### 4. AUTHORITY TO RETAIN IMPACT TAXES PREVIOUSLY COLLECTED BUT AUTHORIZED UNDER THE INAPPROPRIATE STATUTE

■ After *Eastern Diversified,* appellees challenged the County's decision to keep as impact taxes the previously collected or imposed impact fees. The County refused to refund the taxes on the ground that it considered the fees valid taxes. Appellees maintain the County is unable to retain the development impact taxes in the instant case in that it is a retroactive imposition of taxes. Appellees claim the County could only impose the tax after the General Assembly passed Chapter 707 Laws of Maryland, 1990. We note initially that "a tax is not necessarily invalid because it is retroactive...." *National Can Corp. v. Tax Comm'n,* 220 Md. 418, 438, 153 A.2d 287 (1959), *appeal dismissed,* 361 U.S. 534, 80 S.Ct. 586, 4 L.Ed.2d 538 (1960).

In *U.S. v. Heinszen,* 206 U.S. 370, 27 S.Ct. 742, 51 L.Ed. 1098 (1907), the Supreme Court upheld a statute that retroactively gave authority for the imposition of tariff duties previously collected. The Court held that a legislature had the ability to cure, retroactively, previously lacking authority on a principal's ability to ratify the unauthorized acts of an agent. *Id.* at 382, 27 S.Ct. at 745. In order for the County to cure the defect in the impact tax, it must not interfere with intervening rights, *Id.* at 384, 27 S.Ct. at 746, and authority must have existed to impose an impact tax when the taxes were imposed as fees. *Forbes Pioneer Boat Line v. Board of Commissioners,* 258 U.S. 338, 339, 42 S.Ct. 325, 66 L.Ed. 647 (1922).

In *Heinszen,* the President, pursuant to his powers as Commander in Chief, imposed a tariff on goods coming into the Philippine Islands in 1898. In 1899 the treaty ending the Spanish–American War was signed. The Supreme Court held that after the Treaty was ratified the power to impose the tariff had to come from Congress. Congress did not pass legislation imposing the tariff until 1902. Thus, the tariff duties imposed between 1899 and 1902 had not been authorized when imposed and collected. In 1906, Congress passed a statute that "legalized and ratified ... the collection of all such duties" between 1899 and 1902. *Heinszen,* 206 U.S. at 381, 27 S.Ct. at 744. The Court upheld the collection of tariff duties between 1899 and 1902 under a ratification theory. The Court stated:

> the illegality [of the tariff between 1899 and 1902] was not the result of an inherent want of power in the United States to have authorized the imposition of the duties, but simply arose from the failure to delegate to the official the authority essential to give immediate validity to his conduct in enforcing the payment of the duties.

*Id.* at 385, 27 S.Ct. at 746.

Likewise, in the case at bar the problem involving the impact fees did not result from an inherent lack of power to impose them. As we have indicated, that power was contained

in Chapter 808 all along. The problem resulted not from a lack of power but a failure to recognize or cite the proper source of enabling power.

In *Forbes Pioneer Boat Line v. Board of Comm'rs,* 77 Fla. 742, 82 So. 346 (1919), the Supreme Court of Florida declared that the Board of Commissioners of Everglades Drainage District was without authority to impose tolls. The Florida Legislature then passed a law granting the Board the authority needed to collect the tolls and attempting to validate the previous collection of tolls. In reviewing the case, the United States Supreme Court held "ratification of an act is not good if attempted at a time when the ratifying authority could not lawfully do the act." *Forbes,* 258 U.S. at 339, 42 S.Ct. at 325.

The Maryland Court of Appeals in discussing the differences between *Heinszen* and *Forbes* stated:

> The unauthorized action of the tax collectors in *Heinszen* did not violate a controlling statute setting forth the applicable policy, whereas in *Forbes,* there were legislative enactments setting forth the authority of the Commissioners which ... the Commissioners were violating.... [I]n *Heinszen* there never was an expression of legislative policy contrary to the unauthorized action of the administrative officials. Instead, the actions of the appropriate policy makers ... were entirely consistent with the actions of the ... tax collectors. For a reason unrelated to a policy determination concerning the appropriate tariff, there was a hiatus in the authority of the tax collectors. In this sense, *Heinszen* involved the type of defect in authority which is often referred to as a "technical" one. The Commissioners in *Forbes,* however, were, at the time of the tax collections, violating the legislative policy as ascertained by the courts. In *Forbes,* the defect in authority was in no sense "technical" but related to the legislative policy determination of what, if anything, should be charged by the government. The fact that the Legislature later expressed a different intent, and by "curative act" attempted to indicate that its new position had been the policy all along, did not convert the change in policy to a ratification of a "technical" defect.

*Washington Nat'l Arena v. Prince George's County,* 287 Md. 38, 50–51, 410 A.2d 1060, *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980).

In the present case, the legislative policy of this State in 1986 was that the County had the authority to impose the tax. The creation of the impact tax was entirely consistent with Chapter 808, the policy of the state sovereign, and the local legislation was, itself, the expression of policy by the County. There was no lack of authority here. There was, in 1986, merely a technical error in describing the source of power legitimizing the County's policy.

Applying the dictates of *Heinszen* and *Forbes* to the case *sub judice,* the General Assembly's ability to confirm, clarify and validate the County's authority to collect development impact taxes can be stated as follows: If the General Assembly gave the County authority under Chapter 808 to enact the development impact tax, then the County can validate the collection of impact fees as impact taxes so long as the retroactive application does not interfere with vested rights. As we held above, the Court of Appeals did not hold in *Eastern Diversified* that the County did not have authority under Chapter 808 to impose impact taxes. That issue was not then resolved.

Montgomery County has broad taxing authority, subject to some limitations, under Chapter 808. *Maryland Soft Drink Ass'n,* 281 Md. at 127–31, 377 A.2d 486. Had the Court of Appeals held in *Eastern Diversified* that Montgomery County had no authority to enact an impact tax under Chapter 808 then the General Assembly's action in passing Chapter 707 declaring Chapter 808 valid and allowing the County to impose impact taxes would be ineffective. *Forbes,* 258 U.S. 338, 42 S.Ct. 325; *National Can Corp.,* 220 Md. at 439, 153 A.2d 287 (If applying the tax was "a legislative attempt to reverse prior decisions of this Court [of Appeals,] . . . it would be ineffectual. . . .") The tax, however, is permitted to be retained if the Legislature had the authority to enact it to begin with.

[I]f the Legislature possessed the power in the first place to authorize the levy and collection of the taxes in question, then it had the power, by retrospective act, to cure any defect which [it] may have obtained in the assessment and collection of such a tax.

. . . .

". . . [T]he curative act can only be effectual to do that which the Legislature would have been competent to provide for and require to be done by a law prospective in its operation."

*Nat'l Can Corp.*, 220 Md. at 440–41, 153 A.2d 287. *See also County Council v. Carl M. Freeman Assoc.*, 281 Md. 70, 79, 376 A.2d 860 (1977); *Baltimore County v. Churchill Ltd.*, 271 Md. 1, 11, 313 A.2d 829, *appeal dismissed*, 417 U.S. 902, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974); *Katzenberg v. Comptroller*, 263 Md. 189, 199, 282 A.2d 465 (1971); *Berean Bible Chapel v. Ponzillo*, 28 Md.App. 596, 600–01, 346 A.2d 702 (1975).

Appellees cite *Vytar Associates v. City of Annapolis*, 301 Md. 558, 483 A.2d 1263 (1984), and argue it is factually on point with the case *sub judice*. We disagree; *Vytar* is on point with *Forbes* but not the case *sub judice*. *Vytar* involved a rental dwelling fee imposed on landlords by the City of Annapolis. In *Campbell v. City of Annapolis*, 289 Md. 300, 424 A.2d 738 (1981), the Court of Appeals held that the fee was invalid because it had not been expressly authorized by the General Assembly. The General Assembly subsequently attempted to give Annapolis retroactive authority to keep the previously collected fees. *Vytar*, 301 Md. at 569, 483 A.2d 1263. The Court of Appeals held that the General Assembly could not retroactively cure the unauthorized collection of fees because Annapolis had no authority to collect the fees when it did. *Id.* at 573, 483 A.2d 1263. As we have said, the County in this case had the authority to impose impact taxes in 1986.

Likewise, we think the case of *Washington Nat'l Arena*, 287 Md. 38, 410 A.2d 1060, is distinguishable from the case *sub judice*. In *Washington Nat'l Arena*, the County legislative policy set the maximum property tax rate at $1.10. County

administrative officials collected taxes at a rate of $1.65. The Court of Appeals held this was not a technical defect that could retroactively be corrected with curative legislation. *Id.* at 54, 410 A.2d 1060. In the case *sub judice,* Montgomery County had authority under Chapter 808 all along to enact a development impact tax. The defect of trying to enact the tax as an impact fee under Article 25A, which was the wrong source of the County's authority, is a technical defect that can thereafter be cured.

The Tax Court held that "[t]he power of imposition, standing alone, cannot create retroactively, a tax the County now says it intended to levy." The County had more than a mere power of imposition. It attempted to enact a fee that served the same purpose and was applied in the same manner as the tax that it later validly enacted. The defect was in calling it a fee instead of a tax and relying on Article 25A instead of Chapter 808 as authority.

## 5. NOTICE REQUIREMENTS

The County concedes that, in 1986 when it first attempted to enact the impact tax as an impact fee and classified Germantown and Eastern Montgomery County as impact districts, it failed to comply with the notice provisions as stated in Chapter 808, § 1, paragraph (c) but maintains that it substantially complied with the notice provisions. The County further contends that the notice requirements of section 2–73 of the County Code amended § 1, Paragraph (c) of Chapter 808. Section 1, paragraph (c) of Chapter 808 requires the County advertise for three consecutive weeks in two newspapers having a general circulation in the County and that a public hearing be held. Section 2–73 of the County Code requires publication "once a week for two successive weeks ... in at least one (1) newspaper...."

As to the County's contention that it substantially complied with the notice requirements of § 1, paragraph (c) of Chapter 808, it points to the fact that it advertised once a week for two successive weeks in two newspapers, March 7 and 13, 1986 in *The Journal* and March 13 and 20, 1986 in *The Montgomery*

*County Sentinel.* The County also points to the fact that two companion bills regarding impact fees and excise taxes were advertised February 28, March 7, 13, 20, and 31, 1986 in *The Journal, The Montgomery County Sentinel* and *The Washington Post.* A public hearing was held on April 1, 1986 and was continued on April 15, 1986, and notice of the continuation hearing was advertised on April 4, 7, and 14, 1896 in *The Washington Post* and *The Montgomery County Sentinel.*

We agree with the County that substantial compliance with the notice requirements would have been sufficient. *Dutton v. Tawes,* 225 Md. 484, 493, 171 A.2d 688 *appeal dismissed,* 368 U.S. 345, 82 S.Ct. 385, 7 L.Ed.2d 342 (1961); *Cassidy v. Board of Appeals,* 218 Md. 418, 425–26, 146 A.2d 896 (1958). We hold, however, that section 2–73 amended the notice requirements of Chapter 808. We shall not, therefore, further address substantial compliance under the original notice provisions of Chapter 808.

As we have said, we agree with the County's contention that the notice requirements of section 2–73 of the Montgomery County Code amended Chapter 808, § 1(c). The County cites *Hampton Associates v. Baltimore County,* 66 Md.App. 551, 505 A.2d 537, *cert. denied,* 307 Md. 406, 514 A.2d 24 (1986), as authority. In *Hampton,* we stated:

[W]hen Baltimore County adopted a charter pursuant to the Home Rule Amendment, Article XI–A of the Maryland Constitution, the power to make local laws for the County shifted from the State legislature to the County Council. Section 3 of Article XI–A gives the County Council full legislative power to enact local laws on all matters covered by the grant of express powers under Section 2 of Article XI–A, *Town of Forest Heights v. Frank,* 291 Md. 331, 341 [435 A.2d 425] (1981), *including the power to repeal or amend local laws of the County previously enacted by the General Assembly. Murray v. Director of Planning,* 217 Md. 381 [143 A.2d 85] (1958). Subject to the restrictions of its own charter (and the rule that a locally enacted law is invalid if it conflicts with a public general law, *Heubeck v.*

*Mayor and City Council of Baltimore,* 205 Md. 203 [107 A.2d 99] (1954)), the County Council has full power to enact legislation on all matters within the Express Powers Act (Md.Code Ann., art. 25A, § 5) that was adopted pursuant to Article XI–A, § 2 of the Constitution.

*Id.* at 566, 505 A.2d 537 (emphasis added). The County does not dispute, and indeed urges us to adopt, the interpretation of the Court of Appeals in *Eastern Diversified,* which held that the County does not have authority under Art. 25A § 5 of the Maryland Code to adopt a development impact tax. The authority to impose impact taxes is not a "matter[ ] covered by the express powers granted" under the Maryland Constitution Article XI–A § 2. Md. Const. Art. XI–A § 3. The County, however, could alter the terms of the notice requirements of Chapter 808 through the powers conferred on it by Article 25A. *Eastern Diversified,* 319 Md. at 50, 570 A.2d 850; *Howard County v. Matthews,* 146 Md. 553, 563, 127 A. 118 (1924). The amendment as to notice is procedural, not substantive. Thus, we hold that the notice was sufficient in that it complied with the procedural requirements of Chapter 808, as subsequently amended.

■  The issue of whether the County complied with the notice requirements of Chapter 808, § 1(c) when it reenacted the impact tax was not raised below. Since the issue was not raised below and we hold the original notice was sufficient, we shall not address the sufficiency of notice as to the reenactment.

In light of our decision, we find it unnecessary to address appellant's sixth, eighth, and ninth issues.

JUDGMENTS REVERSED; COSTS TO BE PAID BY APPELLEES.[6]

---

**6.** *Compare Wielepski v. Harford County,* 98 Md.App. 721, 635 A.2d 43 (1993) where Judge Bishop for the Court held that the general taxing authority did not permit the fee imposed by Harford County. Harford

County has no grant of authority from the State such as is contained in the grant of authority to Montgomery County in Chapter 808.

Statutes substantially similar to Chapter 808 exist, insofar as we have discovered, only as to Montgomery County, Baltimore County, and Baltimore City.